UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:18CR1006 SNLJ/NCC |
| | ) | |
| TROY McCOTTRELL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER, MEMORANDUM, AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Defendant was arraigned on the Superseding Indictment on September 19, 2019.  On November 1, 2019, Defendant filed a *pro se* Motion for a Bill of Particulars (Doc. No. 48).  On November 25, 2020, counsel for Defendant filed a Motion to Suppress Evidence (Doc. No. 53) and a Motion to Suppress Statements (Doc. No. 54).  The Government filed its Response on December 13, 2019 (Doc. No. 57).  The court held an evidentiary hearing on January 23, 2020.

Based on the evidence and testimony adduced, as well as a review of the transcript of the hearing in this matter; and after having had an opportunity to evaluate the credibility of the witness and observe his behavior, the undersigned makes the following findings of fact and conclusions of law.

## FACTS

On October 6, 2018, Florissant, Missouri Police Det. Eric Schlueter was called to a residence at 910 Lilac Drive to investigate a report of a sick person who was unresponsive.  Det.

Schlueter was assigned to the police department's four-person anti-crime unit that investigates drug crimes and overdose deaths.  Emergency personnel were also present at 910 Lilac and they attempted to revive and resuscitate N.P. to no avail.  N.P. was pronounced dead at the scene and his girlfriend, C.C., agreed to an interview, and she spoke with investigators two or three times that day.  She explained that N.P. used her cell phone earlier that day to contact a source of supply for heroin named "T" via the exchange of text messages.  She said that after they made the purchase, she and N.P. returned to the residence, and they ingested the heroin.  C.C. left the room to get food and she returned to find N.P. in a nonresponsive state.  Det. Schlueter also explained that C.C. did not initially admit her own drug use but she did later after being confronted by investigators.  She also explained that she flushed the remaining heroin down the toilet.  Det. Schlueter believed that C.C. was likely under the influence of heroin when she gave her first statement.

C.C. gave a physical description of T to investigators and she identified the area where she thought he lived nearby.  Det. Schlueter examined C.C.'s cell phone and identified (314) xxx-0881 associated with T.  C.C. said that she and N.P. contacted T to arrange a meeting at the Metrolink station on North Hanley Road near Interstate 70.  They traveled by bus to the commuter station and observed that T arrived in a maroon Chrysler 300.  N.P. entered the car at the only available back seat and T drove the vehicle around the station parking lot.  C.C. saw that there was a front seat passenger and a car seat occupying the other back seat, so she waited for N.P. to exit the vehicle.

Det. Schlueter ran T's cell phone number through law enforcement databases and he determined that (314) xxx-0881 was subscribed to defendant Troy McCotrell and found his address which was saved from defendant's prior arrests.  Det. Schlueter found Defendant's

2

address at 8442 Brotherton Lane, which is also situated near the North Hanley Metrolink station and within a mile of Vatterott College.  Det. Schlueter also presented a six-person photo array to C.C. that included a picture of defendant.  Det. Schlueter told C.C. that T might or might not be included in the photo array. C.C. also knew that T sometimes drove a blue pickup truck.  Det. Schlueter obtained a search warrant for cell phone records for (314) xxx-0881.  (Gov't Exhs. 1a-1d).

Thereafter, Det. Schlueter conducted surveillance around 8442 Brotherton Lane in Ferguson, Missouri and he saw three vehicles parked outside, including a maroon Chrysler 300, a blue Chevy pickup truck and a silver Infiniti.  Detectives learned that the Chrysler was a Budget rental car and the two other vehicles were registered to defendant and his wife.  Det. Schlueter followed defendant to various locations while he drove the Chrysler 300 and saw him conduct short meetings with individuals which were "consistent with drug transactions."[1]  Det. Schlueter arranged for a confidential informant who was familiar with defendant to purchase heroin from him.  The CI used cell phone number (314) xxx-0881 to contact defendant to make the $50 purchase at the North Hanley Metrolink station.

Detectives prepared for the controlled buy with pre-purchase surveillance of defendant at 8442 Brotherton Lane, and they searched the CI in advance for contraband and found none. Detectives saw defendant leave from and return to 8442 Brotherton Lane after meeting the CI. Det. Schlueter then sought and obtained a state GPS tracking warrant for the Chrysler 300, and they attached the GPS tracker on November 20, 2018 to assist the continued physical surveillance of defendant.  They did not observe any suspected drug dealing at the residence. (Gov't Exhs. 2a-2d).

---

[1] Hr'g Transcript, p. 21.

On November 26, 2018, detectives followed defendant from home to the Vatterott College parking lot where he met with the male and female occupants of a green Chevy pickup truck.  A Florissant detective followed defendant home and Det. Schlueter conducted a traffic stop of the Chevy pickup truck.  The occupants, identified as Scottie and Julie, were arrested after a search of the vehicle.  Julie had narcotics in her purse and she gave a post-*Miranda* statement that she met a subject named T to purchase the narcotics after contacting him at (314) xxx-0881.  Julie knew T to carry a .22 pistol and she provided a physical description for T and described his car.  She also identified T in a six-person photo array.  This information was used to support the probable cause affidavit for a state search warrant for 8442 Brotherton Lane. (Gov't Exhs. 3a-3d).

On November 29, 2018, at around 6 a.m., detectives served the warrant with the St. Louis County Tactical Team.  Defendant, his wife, mother-in-law and two children were present inside the home.  No force was used against anyone in the home.  Officers found a firearm, a scale, baggies and suspected narcotics in the master bedroom and other evidence elsewhere inside and outside.  Officers determined that the Chrysler 300 was rented by defendant's wife and she gave written consent to search the vehicle and they seized additional evidence.  Det. Schlueter left a signed copy of the search warrant on the kitchen table.

Around 7 a.m., defendant was arrested at the house and transported to the Florissant Police station.  He gave an interview to police that was recorded by audio and video.  (Gov't Exhs. 4 and 5).  Det. Dustin Edwards advised defendant of his *Miranda* warnings prior to the interview and defendant acknowledged that he understood his rights and agreed to make a statement.  Det. Schlueter recalled that defendant was in his early 40s at the time of the interview.  He had a prior criminal history to include felony convictions.  He did not seem to be

4

under the influence of drugs or alcohol at the time of the interview and he had no difficulty understanding questions asked of him and responding. No threats or promises were made. McCottrell did not invoke his right to silence or ask for an attorney. After voluntarily waiving, McCottrell made an incriminating statement. The undersigned has reviewed the video in its entirety and Det. Schlueter's testimony at the hearing is consistent with the recording. The video and audio recording shows that Det. Edwards said to McCottrell,

> … I'm just gonna read you your rights real quick to make sure you understand those. Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and have him or her with you during questioning. If you cannot afford an attorney, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time. You also have the right to stop answering at any time, until you talk to a lawyer. Do you understand your rights?

Defendant affirmed that he did understand his rights and he agreed to make a statement. Around 10 a.m., officers booked defendant and processed him at the Florissant jail and transported him to this Court for an initial appearance before the undersigned on a federal criminal complaint. At roughly 10:40 a.m., Det. Edwards released defendant to the authority of the U.S. Marshals Service. Defendant appeared for his initial appearance at around 3:07 p.m. before the undersigned.[2]

---

[2] The parties agree that the Court can take judicial notice of its docket entries and defendant's initial appearance. *See* Doc. Nos. 6-7.

# DISCUSSION

## Motion Of Defendant To Suppress Evidence (Doc. #53)

Defendant Troy McCottrell seeks suppression of evidence seized as a result of three search warrants obtained by the Florissant Police.[3]   The Government does not dispute McCottrell's standing to raise these challenges.

## A.      The Three Search Warrants Issued Are Valid

### *October 9, 2018 Search Warrant for Cell Phone Records*

On October 9, 2018 Det. Schlueter applied for and obtained a search warrant for stored communication records from Sprint Spectrum, LLC for a cell phone number ending with the digits (314) xxx-0881.  *See* (Gov't Exhs. 1a-1d).  The time period sought included historical records from September 6, 2018 to the date of application.  Det. Schlueter made a return to the issuing judge on October 16, 2018.  Det. Schlueter represented that the telephone number was used to "secrete evidence of an overdose" in violation of Missouri laws.

According to the affidavit, investigators interviewed C.C. about the overdose death of her boyfriend, N.P., that occurred on October 6, 2018 after they bought heroin at a Metrolink station from a man she identified by the nickname T.  C.C. told detectives that she was T's longtime customer and she had called T at (314) xxx-0881 for several years to order heroin from him.  The couple returned to N.P.'s residence at 910 Lilac Drive in Florissant where they ingested the heroin and N.P. was unresponsive shortly thereafter.  C.C. gave detectives consent to search her cell phone and investigators found a call log with numerous calls from and to a saved contact for T at cell phone number (314) xxx-0881.  Det. Schlueter researched law enforcement databases to

---

[3] Defendant makes a brief reference to a challenge of a purported search incident to his arrest. However, there is no evidence that contraband was seized from his person during these events. So this point is denied as moot.

determine whether any person was previously associated as a match with T's cell phone number. The search results led to Defendant McCottrell's name and pedigree information from prior arrests. Det. Schlueter compiled a six-person photo lineup of subjects with similar physical attributes that included McCottrell. C.C. immediately identified defendant.

### November 20, 2018 GPS Tracking Warrant

Florissant Police detectives next obtained a search warrant before installing and tracking the maroon Chrysler 300 driven by defendant. *See* (Gov't Exhs. 2a-2d). Det. Schlueter applied for a state-ordered GPS warrant on November 20, 2018. Det. Schlueter made a return on December 5, 2018. (*Id.*) In his affidavit, Det. Schlueter identified the vehicle with particularity in terms of its make, model, color, VIN and vehicle license plate. The affiant represented that the Budget rental vehicle was used by defendant in connection with the previously described[4] on-going investigation of violations of Missouri's controlled substance laws.

The affidavit included C.C.'s information that T drove a newer maroon Chrysler 300. Det. Schlueter identified defendant's date of birth and an address for him at 8442 Brotherton Lane. Detectives conducted additional surveillance at 8442 Brotherton Lane. He followed defendant in the Chrysler 300 and observed what he believed to be were hand-to-hand drug transactions conducted by defendant on nearby business parking lots. Finally, in November 2018, a confidential informant working with the Florissant police paid defendant $50 for heroin as part of a controlled buy during which McCottrell drove the subject Chrysler 300.

---

[4]Det. Schlueter attested in the GPS warrant affidavit similarly to the warrant for cell phone records that on Saturday, October 6, 2018, Officer Connor responded to 910 Lilac Drive in Florissant on a report of a sick person, N.P., who possibly overdosed. N.P. was found deceased from an apparent opioid overdose and his girlfriend, C.C., was thereafter interviewed. C.C. identified T as her longtime source of supply for heroin.

### *November 27, 2018 Residential Search Warrant*

On November 27, 2018, Det. Schlueter applied for a no-knock state search warrant for 8442 Brotherton Lane, Ferguson, Missouri 63135.   *See* (Gov't Exhs. 3a-3d).  As affiant, Det. Schlueter explained to the issuing judge that the anti-crime unit was investigating defendant who they believed "sold a fatal dose of heroin" to N.P.  (*Id.*)  The affidavit described pedigree information about defendant and the Chrysler 300 with particularity.  Details included surveillance of defendant while he met with numerous people in what looked like hand-to-hand drug transactions on local parking lots, coming from and returning to 8442 Brotherton Lane. Det. Schlueter recounted working with the confidential informant to make a controlled buy with an audio recording device similar to what was described in the GPS tracking warrant affidavit. Detectives watched defendant leave 8442 Brotherton Lane, meet with the CI and return to the residence.  Detectives confirmed by a field test that the substance defendant sold to the CI was heroin.  On another occasion in late November, detectives followed defendant from 8442 Brotherton Lane, and they conducted a traffic stop of two individuals who met with McCottrell at the parking lot of Vatterott College.  Detectives observed what they believed was a drug transaction, based on their training and experience.  Detectives searched the vehicle as a result of the traffic stop and conducted a field test on a substance found that was cocaine.  After an arrest and post-*Miranda* waiver, an unnamed passenger in the car told detectives that a man using the name T was the source for the baggie of cocaine.  Detectives searched the passenger's cell phone and determined that T's cell phone contact number (314) xxx-0881 matched the cell phone number that was the subject of the October 9, 2018 warrant.  The passenger also identified defendant in a photo lineup and described the vehicle he drove as a red Chrysler 300.

1.      **Probable Cause**

Use of a GPS device to track a vehicle's movements is a "Fourth Amendment search" that generally requires a search warrant. *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019). *See also United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Jones*, 132 S. Ct. 945, 949 (2012)). Law enforcement collection of historical cell site location information is also a "Fourth Amendment search" that generally requires a search warrant. *Carpenter v. United States*, 138 S.Ct. 2206 (2018). It is axiomatic that law enforcement officers must obtain a warrant to search a residence absent some well-defined exception. *Florida v. Jardines*, 569 U.S. 1, 6 (2013).[5] A state court judge issued search warrants in these three instances. As such, the government has satisfied the search warrant requirement under the Fourth Amendment. Defendant's vague claims survive only if the search warrants are invalid.

"Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place. *Faulkner*, 826 F.3d at 1144 (quotations and citations omitted). A reviewing court "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." *Id.* (quotation omitted). There is universal acknowledgement among the courts that probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *See Illinois v. Gates*, 462 U.S. 213, 232

---

[5]The parties agree that defendant did not consent to a search of his residence, vehicle or person. Gov't Response, p. 10 (Doc. No. 57).

(1983). Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.*

It is well-established that, when the issuing judge relies on a supporting affidavit attached to a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citations and quotations omitted); *see also United States v. Farlee*, 757 F.3d 810, 819 (8th Cir.), *cert. denied*, 135 S.Ct. 504 (2014). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference and the role of the reviewing court is "simply to ensure [the issuing judge] had a substantial basis" for the finding. *Illinois v. Gates*, 462 U.S. at 236. "The affidavit should be examined under a common sense approach and not in a hypertechnical fashion." *Solomon*, 432 F.3d at 827 (citation and quotations omitted) *see also*, *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Gladney*, 48 F.3d at 312 (explaining that "[a]ffidavits must be read in a common-sense and realistic fashion")(citations and quotations omitted).

Probable cause may be established in a variety of ways, including reliance on hearsay statements from reliable persons; hearsay statements from confidential informants corroborated by independent investigation; or on the observations of trained law enforcement officers. *See Gates*, 462 U.S. at 245; *Draper v. United States*, 358 U.S. 307, 313 (1959); and *McDonald v. United States*, 335 U.S. 451, 454 (1948). Information from a proven reliable informant is by itself sufficient to support a finding of probable cause to search. *United States v. Wright*, 145 F.3d 972, 974-75 (8th Cir. 1998). Statements by eyewitnesses are also a reliable source to establish probable cause. *United States v. Daigle*, 947 F.3d 1076, 1082 (8th Cir. 2020).

Det. Schlueter's affidavits included sufficient indicia of probable cause to support the issuance of the cell phone records warrant, the GPS tracking device warrant for the Chrysler 300, and the warrant to search 8442 Brotherton Lane.  The first two affidavits establish that C.C. was an eye-witness to defendant's October 6, 2018 distribution of a controlled substance.  *Daigle*, 947 F.3d 1076 at 1082 (re-affirming that the affidavit in support of the search warrant application based on an eye-witness need not attest to the credibility of that informant or the reliability of the information that an eye-witness to a crime provided).  *See also United States v. Harris*, 403 U.S. 573, 583 (1971) (noting that admissions regarding a person's criminal conduct "carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.").  Det. Schlueter conducted computer research and compiled a photo array for C.C., and she made an immediate positive identification.[6]  Even if C.C. was under the influence of heroin during her initial statement, text messages and toll information in C.C.'s phone corroborated her statement about her contact with T.  *See* (Gov't Response, at p. 2).  As for the search warrant for 8442 Brotherton Lane, the affidavit said the passenger (Julie), who met defendant on the parking lot of Vatterott College, had the same cell phone contact information for T as was known to detectives as part of their investigation.  *United States v. Davis*, 867 F.3d 1021, 1027 (8th Cir. 2017) (noting that courts must "assess probable cause from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case," and "based upon a common-sense reading of the entire affidavit") (citations and quotations omitted), *cert. denied*, 138 S. Ct. 1441 (2018).  These witnesses corroborated each other and the investigation by the detectives.

---

[6]The photo arrays are not before the Court for consideration.

Further, in support of the GPS tracking warrant and search warrant for 8442 Brotherton Lane, detectives conducted surveillance around the house and arranged a controlled buy of heroin from McCottrell with audio recording equipment to confirm what the CI told detectives. There is no requirement that a confidential source be past proven reliable if there is other corroboration to support the CI's statements such as here. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference and the role of the reviewing court is "simply to ensure [the issuing judge] had a substantial basis" for the finding. *Illinois v. Gates*, 462 U.S. at 236. To the extent that McCottrell also argues that any vehicle he possessed was improperly searched, his motion is not supported by the record or case law and this point should be denied. *See United States v. Dunn,* 723 F.3d 919, 929 (8th Cir. 2013).

The issuing judges could reasonably and fairly determine that cell phone number (314) xxx- 0881 and the subject vehicle were used in connection with violations of Missouri controlled substance laws. Moreover, there was a substantial basis for the issuing judge's probable cause finding for detectives to search 8442 Brotherton Lane. The Court should deny McCottrell's motion to suppress evidence obtained from the cell phone records, GPS tracking device and residence.

### 2.    Good Faith Reliance

Having found that the three affidavits provide ample probable cause to support the warrants for cell phone records, GPS tracking and to search 8442 Brotherton Lane, there is no need to consider at great length the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 921 (1984). Even if there are deficiencies in the affidavits that

would defeat a finding of probable cause, such deficiencies are not so glaring as to undo investigators' reliance on the warrants that issued.

When considering the good-faith exception, a reviewing court "must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Id.* (citations omitted). The good-faith exception does not apply to certain situations:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
> (2) when the issuing judge "wholly abandoned [the] judicial role" in issuing the warrant;
> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
> (4) when the warrant is "so facially deficient" that no police office could reasonably presume the warrant to be valid.

*United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (quoting *Leon*, 468 U.S. at 923).

There are no allegations that Det. Schlueter included false or misleading information in his affidavits. There is no claim that the issuing judges abandoned the judicial role or that the warrants were facially deficient. Finally, based on the probable cause analysis above, the undersigned cannot say that the three affidavits are so lacking in any indicia of probable cause that they would render the detectives' reliance upon the search warrants unreasonable.

## B.    Defendant's Arrest Was Valid

### 1.    Probable Cause

The rule in *Michigan v. Summers*, 452 U.S. 692 (1981), "permits officers executing a search warrant 'to detain the occupants of the premises while a proper search is conducted,'" *Bailey v. United States*, 133 S.Ct. 1031, 1037 (2013) (quoting *Summers*, 452 U.S., at 705, 101 S.Ct. 2587, even when there is no particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers, *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465,

161 L.Ed.2d 299)(2005).  Detention is permitted "because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial."  *Id*., at 98, 125 S.Ct. 1465.  The *Summers* rule recognized the government's substantial interests in 1) promoting officer safety, 2) conducting a complete search and 3) preventing flight from the scene.  *Id.* at 702-03.  The police's "authority to detain incident to a search" is "categorical," and not dependent "on the quantum of proof justifying detention of the extent of the intrusion to be imposed by the seizure."  *Mena*, 544 U.S. 93 at 98 (the "safety risk inherent in executing a search warrant for weapons was sufficient to justify the use of handcuffs").

Detectives knew defendant was a convicted felon and they were aware that a witness who purchased drugs from T said he regularly carried a firearm in his vehicle.  (Gov't Exh. 3b).  *See also United States v. Johnson*, 528 F.3d 575, 580 (8th Cir. 2008).  However, the rule in *Summers* also contemplates a circumstance such as this one where detectives develop information sufficient to support probable cause to arrest a defendant while serving a search warrant.  In this case, even before the search warrant for 8442 Brotherton Lane was served, detectives conducted a controlled buy of $50 for heroin from defendant.  *Summers,* 452 U.S. at 705 ("Because it was lawful to require respondent to re-enter and to remain in the house until evidence establishing probable cause to arrest him was found, his arrest and the search incident thereto were constitutionally permissible").  And contraband was found in defendant's house as a result of the search.  In this case, detectives had coordinated a controlled buy from defendant prior to finding contraband at his residence.  Defendant is a prior convicted felon and he had two firearms at his residence.  The Eighth Circuit has ruled that whether officers make a formal arrest or a detention

14

ripens into an arrest, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Guevara*, 731 F.3d at 832; quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)); *see also Martinez*, 462 F.3d at 907, 910 (holding in the alternative that even if handcuffing a suspect did convert the detention into an arrest, the arrest was justified by probable cause). "Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ulrich*, 715 F.3d at 1059 (quoting *Borgman*, 646 F.3d at 523). This evidence, combined with the distribution of a controlled substance was sufficient probable cause to arrest defendant. This point should be denied.

**Defendant's Motion To Suppress Statement (Doc. #54)**

> **1.     Defendant's Statements Were Made Voluntarily And Made After He Waived His *Miranda* Warnings**

When a defendant is both in custody and interrogated, he must be advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A defendant's waiver of his *Miranda* rights must be made voluntarily, knowingly and intelligently. *Id.* "Officers must provide Miranda warnings to suspects in custody because 'the inherently coercive nature of custodial interrogation blurs the line between voluntary and involuntary statements.'" *United States v. Diaz*, 736 F.3d 1143, 1148 (8th Cir. 2013) (quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011)) (internal quotation marks omitted). *See United States v. Crisolis–Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014) ("Interrogation in the Miranda context refers to express questioning and to words or conduct that officers should know is reasonably likely to elicit an incriminating response from the suspect." (quotation omitted)). "The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence." *United States v.*

15

*Haggard,* 368 F.3d 1020, 1024 (8th Cir. 2004). The court must examine the waiver by looking "at the totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002). The voluntariness of a statement is judged by the totality of the circumstances, although the Government bears the burden of persuasion. *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004). *See also United States v. Baez*, No. CR 17-135 (ADM/DTS), 2018 WL 6051280, at *8 (D. Minn. Aug. 31, 2018), *report and recommendation adopted*, No. CR 17-135(2) ADM/DTS, 2018 WL 5307826 (D. Minn. Oct. 26, 2018).

The evidence shows that defendant's interview began at 7:34 a.m. conducted by Det. Edwards, who was dressed in plain clothes. Det. Edwards read to defendant his *Miranda* warnings from a police department form and defendant acknowledged that he understood his rights and he responded freely to questions asked of him.[7] Defendant also initiated his own questions directed to Det. Edwards, seemingly in an effort to understand how police obtained a search warrant for his residence, because he said no CI came to his house. The nature of defendant's questions directed to Det. Edwards show that he was alert and understood the gravity of his circumstances, including expressing concern that the investigation not be directed at his wife. Det. Edwards made no promises in this regard and he explained that defendant was the target of the investigation, which is consistent with the government's evidence and eventual charges in this case. Defendant acknowledged that he was shocked by being awakened to police knocking at his door but he was calm, polite and his answers were logical to the questions asked of him. At one point, defendant told Det. Edwards that he understood that the detective was just

---

[7] During the recorded interview, Det. Edwards makes reference to possible prior statements by defendant made during transport from his residence to the police station. Those statements are not before the undersigned. Hr'g Transcript, at 43.

16

doing his job, and he liked him but Det. Edwards was not listening to his explanations in response to questions.  At no time did Det. Edwards display a firearm to McCottrell.  All of this shows that defendant was voluntarily engaged in a back-and-forth dialogue during the interview and he was not forced to talk nor was he under duress.

Moreover, defendant is a man in his 40s who has had contact with the police in the past. Defendant was familiar with his own criminal history and he explained it with some detail when asked.  There is no evidence that defendant was under the influence of drugs or alcohol at the time he made statements.  There is no evidence that he was mentally infirm or so lacked an education that he could not understand the significance of waiving his rights.  He drank water during the interview and he was given a chance to use the bathroom.  Det. Edwards left the room during the interview and gave defendant a break in questioning.  Although McCottrell paused at times before answering questions posed to him, he did not invoke his right to remain silent nor did he ask for an attorney to be present.  All of this suggests under the totality of the circumstances that defendant understood what was said to him and his responses to police questions were intelligent and freely given.  Defendant was not threatened, intimidated or otherwise abused by Det. Edwards during the questioning.  Because the statements were not the result of any threats, promises or coercion by the officers, his statements were voluntary, and made in consideration of the rights afforded him under *Miranda*.  They should not be suppressed. *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).

###    2.    Prompt Presentment

Defendant further contends that following his arrest he was not presented to a judge "as soon as [p]racticable," and his confession should be inadmissible.  (Doc. No. 54, p. 1).  To the

extent that defendant's vague claim, however brief, alleges that a violation of Rule 5(a)(1)(A) occurred in this case, his argument is not supported by the record and should be denied.

Rule 5(a)(1)(A), Federal Rules of Criminal Procedure provides that:

A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise.

In *United States v. Alvarez-Sanchez*, 511 U.S. 350 (1994), the Supreme Court held that the provisions of the above rule apply when a person is arrested for violation of a federal law. The court held that "[A] duty to present a person to a federal magistrate does not arise until the person has been arrested for a <u>federal</u> offense." (Emphasis in original). *Id.* at 358. "This is true even if the arresting officers (who when the arrest is for a violation of state law, almost certainly will be agents of the State or one of its subdivisions) believe or have cause to believe that the person also may have violated federal law." *Id.* Post-arrest statements made by a defendant in custody of state officers for a state offense may be subject to suppression if a defendant can show improper collaboration between federal and state or local officers in order to circumvent the defendant's right to prompt presentment before a judicial officer. *United States v. Alvarez-Sanchez*, 511 U.S. at 359.

There is no evidence of improper collaboration between state and federal law enforcement in this case. It is clear, however, that the Florissant Police intended for defendant to face federal prosecution and a decision was made to work with an AUSA to immediately prepare a federal criminal complaint affidavit on November 29, 2018 with Det. Daniel Cushing as affiant. Rule 5 does apply here. *United States v. Cooke*, 853 F.3d 464, 471 (8th Cir. 2017) (noting that the appropriate remedy for violation of Rule 5 is suppression of evidence illegally obtained). Further, 18 U.S.C. § 3501(c) provides as follows:

18

> In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

Defendant's formal arrest occurred at 7:04 a.m. and the interview ended at 8:55 a.m. Defendant's statement was made well within the so called six hour "safe harbor" provision. *Corley v. United States,* 556 U.S. 303, 309, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009). *United States v. Casillas*, 792 F.3d 929, 930 (8th Cir. 2015). Thus if the statement is otherwise shown to have been voluntary as discussed above, it is not subject to suppression.[8] Moreover, considering that defendant was arrested, interviewed and presented to a magistrate judge for an initial appearance within a nine-hour time frame, it cannot be said that the Government failed the general "constitutional requirement [that] defendants [are] to be brought before a magistrate within 48 hours of arrest." *See United States v. Chavez*, 705 F.3d 381, 383 (8th Cir. 2013) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991)). This point should be denied.

---

[8] As the Government points out Section 3501(b) is subject to the limitations of the Supreme Court's ruling in *United States v. Dickerson*, 530 U.S. 428 (2000).

**Pro Se Motion For Bill of Particulars (Doc. #48)**

Finally, to the extent that defendant *pro se* seeks to supplement his Motions by his letter[9] to the court, received on November 1, 2019, his motion is denied.  Defendant has filed and should file any motions through his counsel.  "There is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel."  *United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994).  "A district court has no obligation to entertain pro se motions filed by a represented party."  *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001); *see also Agofsky*, 20 F.3d at 872 (a court commits "no error" in refusing to rule on pro se motions filed by represented party); *United States v. Frook*, No. 4:05-CR-677 CAS, 2008 WL 5110596, at *4 (E.D. Mo. Dec. 3, 2008) (denying *pro se* motion filed by represented defendant); *United States v. Turner*, No. 4:09CR0032 RWS/TCM, 2009 WL 2175976, at *1 (E.D. Mo. July 21, 2009) (holding the same).  Counsel for defendant has filed pretrial motions on his behalf and defendant was present at a hearing with evidence regarding the allegations against him in Count IV.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for a Bill of Particulars filed *pro se* (Doc. No. 48) is **DENIED as moot.**

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (Doc. No. 53); and Motion to Suppress Statements (Doc. No. 54) **be DENIED**.

---

[9] Defendant's Motion for Bill of Particulars asks that he be "adequately apprised of the charges against him so that he can investigate the relevant fact[s]".

At the direction of United States District Judge Stephen N. Limbaugh, Jr.,

**IT IS HEREBY ORDERED** that this matter is set for trial on **Wednesday, June 3, 2020, at 11:00 a.m.**

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to timely file objections may result in the waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

/s/Noelle C. Collins
United States Magistrate Judge

Dated this 18th day of March, 2020.